IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION


JESUS CENTENO,                        )
            Plaintiff,                )
                                      )
    v.                                )        NO. EP-10-CV-00382-RFC
                                      )        (by consent)
MICHAEL J. ASTRUE,                    )
Commissioner of the Social            )
Security Administration,              )
            Defendant.                )


## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals

from the decision of the Commissioner of the Social Security Administration (Commissioner),

denying his claim for Supplemental Security Income (SSI) under Title XVI of the Social Security

Act, 42 U.S.C. § 1383(c)(3).  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties

having consented to trial on the merits before a United States Magistrate Judge, the case was

transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix

C to the Local Court Rules of the Western District of Texas.  For the reasons set forth below, the

Commissioner's decision is **REVERSED AND REMANDED**.

## PROCEDURAL HISTORY

On November 20, 2007, Plaintiff filed his application for SSI, alleging disability due to

impairments that became disabling on August 1, 2007.  (R:81-88)[1]  The application was denied

initially and on reconsideration.  (R:55-58, 61-63) Pursuant to Plaintiff's request, an Administrative

---

[1] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(R:[page number(s)])".

Law Judge (ALJ) held a hearing to review Plaintiff's application *de novo* on July 22, 2009, at which

both Plaintiff and a vocational expert testified.  (R:30-49)   The ALJ issued his decision on

September 15, 2009, denying benefits.  (R:13-29)  Plaintiff's request for review was denied by the

Appeals Council on July 20, 2010.  (R:4-10) The Appeals Council retroactively granted Plaintiff an

extension of time to file this civil action on December 7, 2010.  (R:1)

On October 18, 2010, Plaintiff submitted his complaint along with a motion to proceed *in

forma pauperis*.  (Doc. 1)  The motion was granted and his complaint was filed. (Docs. 5-6)  The

Commissioner filed an answer on December 27, 2010, and a certified copy of the transcript of the

administrative proceedings was received on December 28, 2010.  (Docs. 17, 20)  On April 8, 2011,

Plaintiff's brief was filed.  (Doc. 26)  On May 5, 2011, the Commissioner filed his brief in support

of the decision to deny benefits.  (Doc. 30)[2]

## ISSUES

Plaintiff presents the following issues for review:

1.    Whether the ALJ erred in his evaluation of the treating physician's opinion;

2.    Whether the ALJ's finding that Plaintiff can perform other work existing in
      significant numbers in the national economy is supported by substantial
      evidence.

(Doc. 26:2)

---

[2] This cause was initially referred by United States District Court Judge David Briones to
then Magistrate Judge Margaret F. Leachman. (Doc. 1)  It was then referred to Magistrate Judge
David C. Guaderrama and, upon consent by the parties, it was later reassigned to Judge
Guaderrama.  (Docs. 16, 19)  Finally, it was reassigned to this Court on April 5, 2011. (Doc. 25)
The parties were ordered to file a new notice of consent or non-consent to Magistrate Judge
jurisdiction on April 7, 2011, and both parties entered notices consenting to this Court deciding
the appeal.  (Docs. 27-29)

## DISCUSSION

### A.    Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995).  Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight."  *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  *Martinez*, 64 F.3d at 173.  In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*.  *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989).  It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance.  *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  Conflicts in the evidence are for the Commissioner, and not the courts, to resolve.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**B.      Evaluation Process**

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work.  20 C.F.R. § 404.1520.  A person's residual functional capacity ("RFC") is what he can still do despite his limitations or impairments.  20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

**C.      The ALJ's Hearing Decision**

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 20, 2007.  (R:21)  At the second step, the ALJ found that Plaintiff had the following severe impairments: "low back pain, arthritis in the right knee, and obesity."  (*Id*.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments.  (R:22)

After considering medical source statement of Dr. Vargas dated June 30, 2009, and determining that it was not entitled to controlling weight, the ALJ found that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in [20 C.F.R. § 416.967(b)] (i.e.[,] lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk up to 6 hours in a normal work day with normal breaks; and sit up to 6 hours in a normal work day with normal breaks), except he is limited to no more than occasional climbing, balancing, stooping, bending over, kneeling, crawling, crouching or squatting.

(R:23-24)

At step four, the ALJ found the following: Plaintiff had no past relevant work.  (R:24) Plaintiff was a younger individual on the date the application was filed.  (R:25)  Plaintiff has a marginal education and "is able to communicate some in English." (*Id.*)  Transferability of job skills was not an issue, because Plaintiff did not have past relevant work.  (*Id.*)

At the fifth step, considering Plaintiff's age, education, work experience, and RFC, as well as vocational expert testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R:25)

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since November 20, 2007, the date the application was filed.  (R:26)

**D.     *Analysis***

      **1.      The ALJ's finding that Plaintiff can perform other work existing in significant numbers in the national economy is not supported by substantial evidence.**

Plaintiff claims that the ALJ's finding at step five is not supported by substantial evidence. (Doc. 26:6)  Plaintiff's argument rests on his contention that he is both illiterate *and* unable to

communicate in English. (*Id*.)   Given that, he argues that the ALJ's decision is supported neither

by the grid rules nor the vocational expert testimony. (*Id*.)

The ALJ, however, did not find that Plaintiff was illiterate *and* unable to communicate in

English.   In fact, the ALJ found neither that Plaintiff was illiterate nor that he was unable to

communicate in English.   Rather, without any elaboration or explanation, the ALJ found that

Plaintiff was "able to communicate some in English []." (R:25)   The ALJ did not rely on the grid

rules; he obtained vocational expert testimony.

In a hypothetical question, the ALJ asked the expert to consider someone with Plaintiff's

education as well as other factors, without defining Plaintiff's educational level, or English language

proficiency, as that is subsumed within the educational criteria. (R:45-47) Also without articulating

what educational/language level he was considering based on the evidence, the expert testified that

such a person could perform the requirements of representative occupations such as light, unskilled

work as an office cleaner,  Dictionary of Occupational Titles (DOT) 323.687-014; a cafeteria worker,

DOT 311.677-010; and a laundry press operator, DOT 363.685-026. (R: 25, 45-47)  For each of

these jobs, the DOT requires the ability to write and speak simple sentences, and read approximately

2,500 two-to-three syllable words. DOT 323.687-014, 311.677-010, and 363.685-026.  Without any

discussion of or reference to these language requirements, the expert testified, and the ALJ found,

that the expert's testimony was consistent with the information contained in the DOT.  (R:25, 47)

Plaintiff testified via a Spanish interpreter at his administrative hearing. (R:30)  Plaintiff

testified that he was unable to read, write or speak English.  (R:33-34)  On Form 3368-Disability

Report, Plaintiff answered that he could not speak and understand English, that he could not read and

understand English, and that he could not write more than his name in English.  (R:119-120)

6

The Commissioner argues that the following provides substantial support for the ALJ's factual finding and determination at step five. A "Disability Report" filled out by a field office employee on November 20, 2007, after a face-to-face interview with Plaintiff indicates that Plaintiff had no difficulty reading or writing. (Doc. 30:6-7; R:115-118) It also indicates no difficulty observed in understanding or talking. (R:117) Significantly, the report does not reflect that at any point during that interview Plaintiff was asked to read, write, speak, or understand anything in English. Further, this is the same report reflecting Plaintiff's answer that he cannot speak and understand English, or read and understand, or write more than his name in English, yet the field office employee does not include any note in his observations to explicitly contradict Plaintiff's assertions.[3]

The Commissioner also argues the ALJ's decision is supported by a Pain Report with a typed date of December 6, 2007, on which "self" is listed where it is asked "Relationship: _____ (if you are completing the form for claimant)" (R:147) Assuming that this response accurately reflected that Plaintiff himself wrote the English responses, including sentences such as "Leaning over, lifting heavy objects, I moved a washing machine and had to leave it half in and half out because the pain was so bad[,]" this would support the ALJ's finding that Plaintiff could communicate at least some

---

[3] Although Commissioner also argues that Plaintiff is not illiterate because he can read and write in Spanish, illiteracy in the regulations refers specifically to illiteracy in English. (*See* Doc. 30:6) The rule is stated as "illiterate or unable to communicate in English." Pt. 404 Subpt. P, App. 2. 202(g). However, the rule has been interpreted as meaning "illiterate in English or unable to communicate in English," not just general literacy in whatever language the person speaks. *See* SSR 03-3P. In discussing education as a vocational factor, the regulations explain: "[t]he term education also includes how well you are able to communicate in English. . . ." 20 C.F.R. 404.1564(b). They go on to state "[i]t generally does not matter what other language a person may be fluent in." 20 C.F.R. § 404.1564(b)(5). Thus, the Court does not find Plaintiff's Spanish literacy to be evidence supporting the ALJ's decision. Moreover, the ALJ did not state a specific finding regarding whether Plaintiff was illiterate or literate in English.

in English.  However, viewed in the light of the entire record, this single answer does not constitute

substantial evidence.  Not only is the Pain Report form not entirely clear as to what information it

seeks,[4] other evidence in the record strongly suggests that it was not Plaintiff who wrote the

responses in English on that form.

Another form with the same December 6, 2007 date typed at the top, asked specifically for

the name and contact information of the person filling out the form and the relation of such person

to the claimant.  (R:157)  When asked in this way, it was answered that the form was filled out by

a Henry W. Rasor, who was of no relationship to Plaintiff.  (*Id*.)  The handwriting on this form, bears

a remarkable similarity to the handwriting on the Pain Report.  (*Compare* R:147, 157)

Further, no one questioned Plaintiff about the Pain Report form at the hearing to clarify who

had written the English responses.  Nor was there any statement made at the hearing to suggest that

anyone believed that Plaintiff had filled out the form in English to provide Plaintiff with an

opportunity to rebut that assumption.  The ALJ did not indicate either at the hearing or in his written

decision that he had considered such inconsistencies and resolved them unfavorably to Plaintiff, nor

did he provide the basis for such resolution.  The Commissioner merely suggests that the Pain Report

supports the ALJ's finding and conclusion.

The Commissioner also argues that the ALJ's factual finding that Plaintiff can communicate

some in English is supported by Plaintiff's signature on a contract for representation that is written

in English.  (Doc. 30:7; R:59)  This assumes that no one provided him a translation of the document

---

[4] The form asks for identifying information, presumably for the claimant, not the person
filling out the form, but requests "YOUR NAME" and "Your SOCIAL SECURITY NUMBER"
and "Your MAILING ADDRESS" using "you" or "your" to refer both to the claimant and, as the
Commissioner's interpretation suggests,  to the person filling out the form.  (R:147)

or explained it to him in Spanish.  There is no evidence to support such an assumption.  The Court

notes that the Social Security Administration sent Plaintiff documents in Spanish as well as in

English.  (R:13-18)  Plaintiff also provided contact information indicating that there was someone

who spoke English that would be able to assist him in communicating with the SSA.  (R:119)

Even if the evidence the Commissioner highlights were to constitute substantial evidence

from which a reasonable mind could conclude that Plaintiff was not entirely illiterate and unable to

communicate in English, it would not constitute substantial evidence to support the ALJ's step-five

determination.  Nowhere in the record was it developed that  Plaintiff could communicate in English

to the degree necessary to satisfy the DOT criteria for the jobs the expert listed.  There is no explicit

finding that Plaintiff can perform these job requirements and no substantial evidence in the record

to support any such implicit finding.

The expert testified that his testimony did not conflict with or vary from the DOT, and thus

he appears to have concluded that Plaintiff met the language requirements set forth in the DOT to

perform  these  jobs.   (R:47)   The  basis  for  such  conclusion  is  not  reflected  in  the  record.

Significantly, the ALJ's finding that Plaintiff can communicate some in English indicates that

Plaintiff's education, his English language ability, is limited.  Although the ALJ asked the expert to

consider someone with Plaintiff's education, the ALJ's hypothetical question did not define any

educational limitations explicitly.  The ALJ failed to include in the hypothetical question that

Plaintiff is only able to communicate some in English, or to articulate what he meant by "some."

Thus, the hypothetical question posed to the expert did not define all of Plaintiff's limitations.  For

a vocational expert's testimony to provide substantial evidence to support the ALJ's disability

determination,  the  expert's  testimony  must  respond  to  a  hypothetical  question  including  all

limitations supported by the record.  *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (addressing a step-five denial).  As a result, the expert's testimony has no evidentiary value with respect to Plaintiff's ability to perform other work in the national economy.

Reliance on an expert's response to an erroneous hypothetical question, however, is subject to harmless error analysis; a court will not reverse an ALJ's decision for lack of substantial evidence where the plaintiff makes no showing of prejudice resulting from the deficiencies alleged.  *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).  The Court cannot find this error to be harmless.

The regulations require the ALJ to evaluate a claimant's ability to speak, understand, and read and write in English when evaluating what work the claimant could perform.  20 C.F.R. § 404.1564(b)(6).  The burden is on the Commissioner at this step in the sequential process.  The Commissioner failed to establish that Plaintiff's English language skills were sufficient to perform the jobs identified by the expert.  Because there is not substantial evidence in the record to support the ALJ's step-five finding, the cause must be reversed and remanded for further administrative action consistent with this opinion.

## 2.    The ALJ erred in his evaluation of the treating physician's opinion

The Court also notes that the ALJ erred by failing to seek clarification or additional evidence from Plaintiff's treating physician, Dr. Vargas, absent other medical opinion evidence based on personal examination or treatment of Plaintiff, in accordance with 20 C.F.R. § 416.912(e).

In a letter dated July 15, 2008, Dr. Vargas indicated that Plaintiff had diagnoses of arthritis on the right knee as well as low back pain. (R:229, 264)  Plaintiff had low back pain radiating down the left leg due to spinal cord stenosis at L5-S1 accompanied muscle spasm.  Strenuous activity and lifting over 20 pounds can aggravate his condition." (R:229, 264)

In February 2009, Dr. Vargas indicated that Plaintiff should not perform "heavy" lifting. (R. 248)

In a Medical Source Statement signed by Dr. Vargas on June 30, 2009, he opined that Plaintiff can occasionally lift and carry 10 pounds and frequently lift and carry less than ten pounds and that due to radioculopathy of both legs, Plaintiff could stand or walk less than two hours in an 8-hour workday. (R:260-63)  He asserted that Plaintiff's ability to push or pull was limited in the lower extremities and that Plaintiff should never perform postural activities, stating "[t]he patient has spinal stenosis resulting in severe bilateral lower extremity radioculopathy (pain and numbness) with [minimum activity]." (R:260-63)

In a letter dated January 7, 2010, presented to the Appeals Council, Dr. Vargas indicated that Plaintiff suffered from lower back pain radiating down both legs and associated with numbness of both legs. (R:265)  These symptoms had progressed, as had the MRI findings of December 10, 2009, compared to the MRI findings of September 10, 2007. (*Id*.)  Plaintiff recently had often had trouble getting out of bed or doing any heavy lifting because of these symptoms. (*Id*.)  Plaintiff was [unable] to do any work requiring repeated heavy lifting over 15 pounds and standing or stair climbing for over 15-20 minutes. (*Id*.)

While a treating physician's opinion generally deserves considerable weight, the ALJ is free to assign little or no weight to the opinion of any physician for good cause. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).  Good cause exists where statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).  Otherwise,

absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton v. Apfel*, 209 F.3d at 453.

The ALJ discounted the probative value of the opinions reflected in Dr. Vargas's medical source statement dated June 30, 2009, stating:

> . . . the medical source statement of Dr. Vergas (*sic*) dated June 30, 2009 . . . varies with the report made by Dr. Vargas in July 2008 that lifting over 20 pounds aggravated the claimant's condition . . . and his February 2009 statement that the claimant was precluded only from heavy lifting []. Moreover, Dr. Vargas' treatment notes also specifically cite no leg pain and do not reflect ongoing complaints of radiculopathy in both legs as noted in the June 30, 2009 statement. For these reasons, the undersigned concludes that the statement of Dr. Vargas is not entitled to controlling weight on the issue of disability.

(R:24)

The Commissioner argues that the ALJ did not err in discounting the treating physician's opinions because they were not only brief and conclusory, but also contradictory and unsupported by the medical evidence. (Doc. 30:4) The ALJ did not state brevity or conclusiveness as a reason he discounted Dr. Vargas's opinion. (R:24) Nor does this Court find Dr. Vargas's opinion unduly brief or conclusive.

The ALJ found that Dr Vargas' statements dated June 30, 2009, July 2008, and February 2009 varied. (R:24) Variation, however, is not synonymous with conflict. In this case, the variation indicated a decrease over time in Plaintiff's ability to lift and carry. The ALJ, however, did not seek

12

an explanation from the doctor for the variances.  Plaintiff points out that the last opinion submitted by Dr. Vargas to the Appeals Council explained that Plaintiff's impairment had progressed.  (Doc. 26:3)  While the Commissioner argues that Dr. Vargas's last opinion contradicts such progression, the wording in the doctor's opinions differs such that reference to different weights cannot conclusively be said to be contradictory.  Clarification was necessary and the Commissioner failed to obtain it.

The second reason the ALJ gave for not giving Dr. Vargas's opinion controlling weight was that "treatment notes specifically cite no leg pain and do not reflect ongoing complaints of radiculopathy in both legs as noted in the June 30, 2009 statement." (R:24)  While the treatment notes on November 7, 2007, do state "no leg pain" treatment notes from September 11, 2008, specifically cite bilateral radiculopathy, and another note dated April 28, 2009, cites leg pain.  (R: 206, 235, 248, 251)  The ALJ may not pick and choose only the evidence that supports his decision.  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  The ALJ did not address these other records and the Court cannot reconcile them with the ALJ's finding.

The ALJ's reasons for not giving controlling weight to Plaintiff's treating physician's opinion are not supported by substantial evidence.  Therefore, on remand, the Commissioner should additionally readdress to what weight the opinion of Dr. Vargas is entitled under Sections 416.927(d), 416.912(e), seeking clarification where necessary.

**CONCLUSION**

The Court concludes that the ALJ's findings are not supported by substantial evidence and

are not free of legal error.  Thus, the matter is **REVERSED and REMANDED** to the Commissioner

for further administrative proceedings consistent with this opinion.

SIGNED and ENTERED on March 5, 2012.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

14